UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RUDY M.[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:20-CV-00315-JD-MGG |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration,[2] ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Rudy J. M. ("Mr. M.") seeks judicial review of the Social Security Commissioner's decision denying his application for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI. On November 13, 2020, this matter was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b), and N.D. Ind. L.R. 72-1(b). [DE 16]. For the reasons below, the undersigned **RECOMMENDS** that the Commissioner's decision be **REMANDED**.

**I.    RELEVANT BACKGROUND**

On March 28, 2014, Mr. M. protectively filed his application for DIB and SSI based on the totality of his impairments, which include degenerative disc disease of the

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the Plaintiff by first name and last initial only.
[2] Kilolo Kijakazi is now the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

lumbar spine, degenerative disc disease of the cervical spine, diabetes mellitus (type 2), hypertension, obesity, and affective disorder. [R.1804[3]]. Mr. M. alleges that these conditions render him unable to perform his past work as a laborer and that he is also unable to perform any work that may exist in the national economy based on his physical and mental limitations. Mr. M. alleges a disability onset date of January 11, 2011.

Initially, the Social Security Administration denied Mr. M.'s claim initially and upon reconsideration after a video hearing before an Administrative Law Judge ("ALJ") on April 5, 2017. [R.12]. Mr. M. appealed the ALJ's decision to this Court, and the matter was remanded to the ALJ by an agreed motion. [R.1896-97]. The ALJ conducted a second video hearing on December 30, 2019, after which the ALJ issued a decision on January 30, 2020. [R.1801-27]. The ALJ found that Mr. M.'s status post-fusion surgery to lumbar spine with secondary to degenerative disc disease (of the lumbar spine), degenerative disc disease of the cervical spine, diabetes mellitus (type 2), hypertension, obesity, and affective disorder are severe medical impairments. [R.1804]. The ALJ then determined that Mr. M. has the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b)[4], with certain non-exertional limits. [R.1818]. The ALJ found that Mr. M. can:

- occasionally lift and/or carry a maximum of 20 pounds;
- frequently lift and/or carry a maximum of 10 pounds;

---

[3] The administrative record, referenced in this Report and Recommendation as "[R.##]", is available electronically at docket entry 19.

[4] DIB requirements are found at 20 C.F.R. § 404, while SSI requirements are found at 20 C.F.R. § 416. They are essentially identical. For efficiency's sake, the undersigned will only reference the DIB requirements in this Report and Recommendation.

- walk and/or stand for about 6 hours total out of an 8-hour workday;
- sit for about 6 hours out of an 8-hour workday;
- and push and/or pull to include operation of hand/or foot controls with the bilateral upper and lower extremities as restricted by the limitations of lifting and/or carrying subject to:
    - Postural limitations of:
        - No climbing ladders, ropes or scaffolds;
        - Occasional climbing ramps or stairs; and
        - Occasional stooping, crouching, kneeling or crawling; and
    - Environmental limitations of:
        - Avoiding all exposure to unprotected heights and dangerous moving machinery [R.1818-19].

The ALJ also found that Mr. M.'s work should require performance of no more than simple, routine and repetitive tasks, and that Mr. M. is not able to understand, remember, or carry out more complex or detailed tasks or instructions, but that he is able to react to reasonable changes in work assignments. [R.1818]. Moreover, his work should require no more than only occasional interaction with the public in the working setting and only occasional interaction with co-workers and supervisors. [*Id.*]. Finding that Mr. M. did not have a history of past relevant work, the ALJ concluded that, based on Mr. M.'s RFC, work experience, education, and age, Mr. M. could find work that exists in significant numbers in the national economy, namely in the following representative occupations:[5] Housekeeping, cleaner; Mailroom clerk; and Office helper. [R.1826]. Consequently, the ALJ decided that Mr. M. is not disabled under the Social Security Act and denied him DIB and SSI. [R.1826]. The ALJ's decision has now become the final decision of the Commissioner.

---

[5] "Occupations" as defined in the *Dictionary of Occupational Titles* (DOT), published by the U.S. Department of Labor.

Mr. M. requested an extension of time to file for judicial review, which request was granted by the Appeals Council. [R.1792-93]. He now seeks judicial review of the Commissioner's decision in this Court pursuant to 42 U.S.C. § 405(g).

## II. DISABILITY STANDARD

To qualify for DIB and SSI, a claimant must be "disabled" under the Social Security Act ("Act"). 42 U.S.C. § 423(a)(1). A person is "disabled" under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A).

An ALJ must follow a five-step sequential evaluation process to decide whether a DIB or SSI claimant is disabled. 20 C.F.R. § 404.1520(a)(4). The five-step process requires an ALJ to determine (1) whether the claimant is employed, (2) whether the claimant's impairments are severe, (3) whether any of the claimant's impairments are conclusively disabling, (4) whether the claimant can perform his past relevant work based upon his RFC, and (5) whether the claimant is capable of performing other available work. *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except Step Five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## III. STANDARD OF REVIEW

This Court's judicial review of disability benefits cases is deferential. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). The ALJ's factual determinations must be affirmed if supported by "substantial evidence." 42 U.S.C. § 405(g). A reviewing court

4

must review the entire administrative record, but it does not reconsider facts or evidence or substitute its judgment for that of the ALJ. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Where the ALJ's decision contains errors of fact or logic, however, the deference owed to the ALJ's decision is lowered. *Thomas*, 745 F.3d at 806.

Moreover, an ALJ's decision cannot be affirmed if it lacks evidentiary support or an inadequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). An ALJ cannot "cherry pick" the record to support a finding of non-disability while ignoring evidence that points to a disability finding. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). An ALJ need not, however, address every piece of evidence in the record so long as she builds a "logical bridge" from the evidence to her conclusions. *Id.* At a minimum, an ALJ must demonstrate that she considered the important evidence so that a reviewing court can "trace the path of [her] reasoning." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

Therefore, the question on judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ used "the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2007). Substantial evidence is "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Elder*, 529 F.3d at 413.

## IV. ANALYSIS

### A. Issues for Review

Mr. M. claims that the ALJ erred in three respects. First, Mr. M. argues that the ALJ failed to give proper weight to medical opinions. Second, Mr. M. asserts that the ALJ failed to properly address Mr. M.'s use of a cane. Finally, Mr. M. claims that the ALJ filed to properly address Mr. M.'s symptoms.

### B. Step Two and Three Determinations

At Step Two, the ALJ is required to determine whether the claimant's medical impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that any of a claimant's alleged impairments are severe, the ALJ proceeds to the Step Three Listing analysis to determine if the claimant is presumptively disabled based on the severity of his impairments. 20 C.F.R. § 404.1520(a)(4)(iii).

Here, the ALJ determined that Mr. M.'s status post-fusion surgery to lumbar spine with secondary to degenerative disc disease (of the lumbar spine), degenerative disc disease of the cervical spine, diabetes mellitus (type 2), hypertension, obesity, and affective disorder constitute severe medical impairments. [R.1804]. Neither party contests this Step Two ALJ finding, nor the corresponding Step Three determination that Mr. M. did not have an impairment or combination of impairments that met or medically equaled the severity of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1[6].

---

[6] *See* 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.

## C.     RFC Determination

The ALJ proceeded to determine if Mr. M. had a residual functional capacity (RFC) to perform any type of work as defined in the Code of Federal Regulations. A claimant's RFC is his maximum ability to perform work activities on a sustained basis despite the limitations from his impairments. 20 C.F.R. § 404.1545(a)(1). To determine a claimant's RFC, an ALJ must consider all of the claimant's symptoms, their consistency with the objective medical evidence and other evidence in the record, and their intensity, persistence, and limiting effects. *Id.*

As Mr. M. concedes, Mr. M.'s medical history was thoroughly outlined in the ALJ's decision [DE 21 at 3]. Yet, Mr. M. attacks the ALJ's RFC determination on three prongs: (1) basing the RFC on unreliable medical evidence; (2) failing to account for Mr. M.'s use of a cane in the RFC; and (3) using the wrong standard to analyze Mr. M.'s subjective symptoms. *Id.* As such, Mr. M. asserts, the ALJ concluded that Mr. M. was not disabled without providing a "logical bridge" between his symptoms and the ALJ's conclusion. *Id.*

Mr. M.'s first contention is that the ALJ relied upon unreliable medical expert testimony in determining Mr. M.'s RFC. As the Court finds that this issue is dispositive

of this appeal, the Court will not concentrate on the other claims of error regarding Mr. M.'s use of a cane[7] or the standard applicable to Mr. M.'s subjective symptoms.[8]

While the applicable standard of review is deferential, *see, e.g.*, *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010), this Court may not "simply rubber stamp the Commissioner's decision without a critical review of the evidence, *Clifford*, 227 F.3d at 869. Rather, the Court "examine[s] the [ALJ]'s opinion as a whole to ascertain whether he considered all of the relevant evidence, made the required determinations, and gave

---

[7] In his decision, the ALJ stated that Mr. M. "presented to the hearing with a cane and his use of a cane was occasionally documented." [R.1821]. Mr. M's use of cane raises the obvious question: whether the cane is medically required and accordingly limits Mr. M.'s ability to work. Mr. M. argues that the ALJ erred in finding that his cane is not medically required and that the ALJ's RFC determination is therefore flawed because it does not account for his limitations arising from the use of his cane. In considering the effects of a cane on a claimant's RFC, the ALJ is "required to consider documentation that establishes whether an ambulatory aid is medically required." *Shonda S. v. Berryhill*, No. 1:18-cv-00715-JRS-MJD, 2019 WL 1323922, at *5 (S.D. Ind. Mar. 25, 2019); *see also* SSR 96-9p, 1996 WL 374185, at *7 (Jul. 2, 1996) ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing [its] need . . ."). Here, the record demonstrated—and the ALJ discussed—Mr. M.'s abnormal gait that favored his right leg, reported numbness in his feet due to diabetes, the abnormal sensation response during a consultative examination, the medical testimony that the limping gait was indicative of pain, and medical evidence indicating the severity of degenerative disease in his lumbar spine, the pain his right leg, and the numbness in both feet [R.1821]. As discussed infra, the medical expert did not demonstrate an adequate command of the entire medical record, and this includes evidence of Mr. M.'s use of a cane. On remand, the ALJ should consider the impact of this evidence on Mr. M.'s medical need for a cane and should ask the medical expert to review the extensive record regarding Mr. M.'s use of a cane and the impact, if any, that this evidence has on his RFC determination. Perhaps further testimony from the claimant would also be illuminating on this issue.

[8] An ALJ's evaluation of subjective symptoms is essential to the proper disposition of a claim, and the ALJ must support his conclusions with legally sufficient and specific reasons. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). On remand, the ALJ can assess Mr. M.s subjective symptoms using the following regulatory criteria:
- When evaluating a claimant's subjective symptoms, the correct standard is whether the subjective symptoms are reasonably consistent with the objective medical evidence. 20 CFR § 404.1529(c)(3).
- "[A]ny symptom-related functional limitations and restrictions that [the claimant's] medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account…" *Id.*
- "[S]ymptoms, including pain, will be determined to diminish [the claimant's] capacity for basic work activities to the extent [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 CFR § 404.1529(c)(4).

8

supporting reasons for his decisions." *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir. 1985).

In evaluating a medical opinion—whether it comes from a treating physician or a reviewing expert—an ALJ must evaluate a medical expert's opinion using the factors set forth in 20 C.F.R. § 404.1527(a)-(d), including "the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions." 20 C.F.R. § 404.1527(e)(2)(ii).

Moreover, an ALJ is required to build a logical bridge from the medical evidence to his determination of RFC. *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005). "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contrary opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

Generally, treating source opinions are given greater weight because treating sources are more familiar with a claimant's condition and circumstances. *Id*. For claims filed before March 27, 2017,[9] like Mr. M.'s, a treating physician's opinion is to be given

---

[9] For cases filed after March 27, 2017, the regulations have established a new standard. Under the revised standard, an ALJ must consider the following factors when evaluating a medical opinion: consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, and examining relations; specialization; and other factors that tend to support the medical opinion, including evidence that the medical source is familiar with other medical evidence or has an understanding of social security policies. 20 CFR § 404.1520c(c). Of these factors, the most important are the opinion's support and consistency, 20 CFR § 404.1520c(a), and the ALJ must not only consider these important factors but also must explicitly discuss these two factors in his decision. 20 CFR 404.1520c(b). Failure to consider the important factors requires the District Court to remand. *See, e.g.*, *Tammy M. v. Saul*, CIVIL NO. 2:20cv285, 2021 WL 2451907, at *8 (N.D. Ind. June 16, 2021). As such, even if applying the new standard, this case would need to be remanded.

controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence" in the record. 20 CFR § 404.1527(c)(2).

Here, the ALJ gave significant weight to the opinion of a physician—Subramaniam Krishnamurthi, M.D. Dr. Krishnamurthi did not treat the claimant and did not examine the claimant, but instead based his opinion on his review of the medical records. It should be noted that Dr. Krishnamurthi is board certified in internal medicine and cardiology, and the claimant did not object to Dr. Krishnamurthi's qualifications as a neutral expert. Yet, while Dr. Krishnamurthi has the qualifications to express an expert opinion, his grasp, recall, and analysis of Mr. M.'s medical records leave much to be desired. In fact, Dr. Krishnamurthi's opinion – on which the ALJ relied in making his decision—is rife with significant inaccuracies, which both undermine Dr. Krishnamurthi's conclusions and undercut the ALJ's decision. *See, e.g., Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006) (an ALJ may not rely on "errors of fact or logic"); *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (remanding because the ALJ "misstated some important evidence and misunderstood the import of other evidence").

Perhaps fatal to the ALJ's conclusion is his finding that Dr. Krishnamurthi's opinion deserved significant weight because it "reflected the complete treatment." [R.1822]. This is a misstatement of Dr. Krishnamurthi's familiarity with Mr. M.'s medical records, which—to be fair—represents nearly 1600 pages of treatment. Yet,

throughout his testimony, Dr. Krishnamurthi made several patent factual misstatements about these records.

With regard to Mr. M.'s diverticulitis diagnosis, Dr. Krishnamurthi claimed that it was "not an ongoing thing" and "he had a one-time CT of the abdomen done" [R.1847]. Yet, the ALJ notes that Mr. M. sought treatment for symptoms related to diverticulitis at least 22 times [R.1805]. In fact, the record is replete with information about Mr. M.'s abdominal distress, which required repeated visits to the emergency room, and to which Mr. M. arrived by ambulance on no less than nine occasions [R.871, 908, 941, 972, 1006, 1048, 1084, 1113, 1143, 1443, 1461, 1526, 1551, 1570, 1595, 1608, 1627, 1650, 1662, 1673, 1689, 2051, 2062, 2074]. Contrary to Dr. Krishnamurthi's statement at the hearing, Mr. M. did not have only one abdominal CT of the abdomen; rather, Mr. M. underwent at least ten CT scans of the abdomen and pelvis within a period of approximately 18 months. *Id.*

Dr. Krishnamurthi also misstated Mr. M.'s prescription history when he opined that he "didn't see anything there." [R.1847]. Yet, the records are littered with documented prescriptions related to Mr. M's abdominal symptoms, including Protonix2, Prilosec3, Bentyl4, Zofran5, Flagyl6, Cipro7, and Colace8. [R.855, 887-88, 918, 952, 988, 1024-25, 1060-61, 1097-98].

Dr. Krishnamurthi's opinion about the degenerative changes to Mr. M.'s lumbar spine is also suspect. Dr. Krishnamurthi relied on an "MRI" from October of 2017 in finding that Mr. M. had "no disc herniation, [a] mild bulging in the first [disc], [and] a mild stenosis" [R.1845]. Dr. Krishnamurthi cited this evidence as significant in his

11

determination of an RFC. *Id.* Later in the hearing, Dr. Krishnamurthi stated that this 2017 MRI "didn't show much" [R.1853]. Perhaps that is not surprising because this 2017 "MRI"—to which Dr. Krishnamurthi gave great importance in arriving at his opinion—was, in actuality, only a CT scan. [R.2117-18]. When given a chance to clarify his opinion by Mr. M.'s representative, Dr. Krishnamurthi doubled down by giving greater weight to the phantom 2017 MRI than to a lumbar spine x-ray in November of 2019 [R.1854]. He claimed that an MRI would be more indicative of disc changes than an x-ray. *Id.* Of course, while that may be true theoretically, Dr. Krishnamurthi was actually basing his opinion on a misreading of the medical records. His over reliance on the phantom MRI led him to ignore other salient information about degenerative changes.[10]

Furthermore, Dr. Krishnamurthi apparently misunderstood the results of Mr. M.'s consultive examination with Dr. Smejkel. [R.689-94]. Dr. Krishnamurthi stated that Mr. M. was "able to stand on sitting [sic] portion without difficulty" [R.1849], when Dr. Smejkal reported from his consultive exam that Mr. M. "is able to stand from a sitting position with difficulty." [R.692]. Dr. Krishnamurthi also stated that "when I'm looking at the . . . range of motions[,] only the lumbar spine [is] slightly reduced." [R.1849]. Instead, the consultative exam showed Mr. M.'s range of motion for lumbar forward flexion was limited to a range of 45 degrees, when 90 degrees would be a normal range of motion. [R.693]. As such, Mr. M.'s range of motion was 50 percent of a normal range,

---

[10] *See, e.g.*, a 2013 CT showing postsurgical changes with "extensive heterotopic bone formation around the posterior facet joints" with moderate stenosis and moderate encroachment at the L4-5 [R.532; 587-88; 594]; a September 2017 x-ray indicating "advanced arthritic changes" and "pronounced right lateral posterior facet arthritic changes at L4-5" [R.2106]; and a November 2019 x-ray identifying "severe degenerative facet changes with prominent hypertrophic changes at L4-5 and L5-S1."[R.2193].

12

and the medical record does not support Dr. Krishnamurthi's conclusion that the range of motion is only "slightly reduced." Additionally, the dynamometer grip test noted that Mr. M. was able to generate only 12.8 kilograms of force with his right hand[11] [R.691], which Dr. Krishnamurthi opined was "kind of normal." [R.1845]. However, based on scientific studies, the average grip strength for men aged 45-49 is 109.9 pounds (49.85 kg) in the right hand and 100.8 pounds (45.72 kg) in the left hand.[12] As such, when Mr. M. was able to generate only 12.8 kg of grip force in his right hand, his result was 25% of a normal male in his age group. Once again, Dr. Krishnamurthi did not accurately provide the ALJ with basic facts about Mr. M.'s medical records.

These factual inaccuracies not only indicate that Dr. Krishnamurthi was not familiar with the entire medical record, but also undermine the ALJ's decision to afford "significant weight" to a medical opinion that was not supported by the entire medical record. Obviously, a "decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (quoting *Lopez*, 336 F.3d at 539). Likewise, a decision based on inaccurate information and suspect conclusions is defective and should be remanded for further consideration.

---

[11] Mr. M. was able to generate 27.0 kilograms of force with his left hand. [R.691].
[12] Virgil Mathiowetz et al., "Grip and Pinch Strength: Normative Data for Adults," 66 Archives of Physical Medicine and Rehabilitation 69, 71 (1985), https://www.researchgate.net/publication/19190602 _Grip_and_Pinch_Strength_Normative_data_for_adults (visited February 22, 2022).

## V. CONCLUSION

Here, the ALJ gave "significant weight" to inconsistent and contradictory testimony from a non-treating and non-consulting medical expert and either ignored or was unaware of the overall impact these errors had on the determination of both severe and non-severe impairments on the RFC. Standing alone, "[a] failure to fully consider the impact of non-severe impairments requires reversal." *Denton,* 596 F.3d at 423 (citing *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003). Therefore, remand is warranted. On remand, the ALJ must redetermine the RFC, paying particularly close attention to the totality of the medical record.

Accordingly, the undersigned **RECOMMENDS** that the Court **REVERSE and REMAND** the Commissioner's decision denying Mr. M. Disability Insurance Benefits and Supplemental Security Income.

> **NOTICE IS HEREBY GIVEN** that within fourteen (14) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). **FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.**

**SO ORDERED** this 28th day of February 2022.

> s/Michael G. Gotsch, Sr.
> Michael G. Gotsch, Sr.
> United States Magistrate Judge